IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE

DISTRICT COURT OF PENNSYLVANIA

| | |
|---|---|
| Courtney Miller <br><br> Plaintiff, <br><br> vs. <br><br> Eric Miller, Luzerne County, <br><br> Luzerne County Children and <br><br> Youth Services, The Luzerne <br><br> County District Attorney Office, <br><br> Joseph E. Mariotti Esq. <br><br> Defendants, | NO. 3: 2025 CV 01454 <br><br><br> **FILED SCRANTON** <br><br> SEP 02 2025 <br><br> PER _____ <br> DEPUTY CLERK |

**PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF OBJECTIONS TO THE REPORT AND RECOMMENDATION AND MOTION FOR TEMPORARY RESTRAINING ORDER**

I. **INTRODUCTION**

1. Plaintiff Courtney Miller, proceeding pro se, respectfully submits this Reply Brief in further support of her Objections to the Magistrate Judge's Report and Recommendation ("R&R") her renewed Motion for a Temporary Restraining Order ("TRO"). This Reply is filed under conditions of extreme

urgency, as a state court Protection from Abuse hearing is scheduled for September 9th, 2025. Immediate federal court intervention is necessary to prevent the immediate and irreparable constitutional harm that will occur if that hearing proceeds, thereby preserving the status quo pending this Court's Review.

2. The R&R does not take into consideration the Anti-Injunction Act and the Younger abstention that support the well-pleaded allegations that the state court proceedings have been initiated and conducted in bad faith. Crucially, new evidence has emerged demonstrating that the state court process has been corrupted by a judicially entered custody order procured through fraud. This new evidence powerfully reinforces that abstention is inappropriate. The R&R also misconstrues the Rooker-Feldman doctrine, which is inapplicable to ongoing, prospective constitutional violations stemming from the Defendants' fraudulent conduct. Finally, the R&R recommends against the issuance of a TRO, which would result in imminent, irreparable harm facing Plaintiff and her minor child. For those reasons, the Court should reject the R&R and grant the TRO.

## II. ARGUMENT

### A. The R&R Errs in Recommending Dismissal Based on Jurisdictional and Abstention Doctrines.

1. **The Anti-Injunction Act Does Not Bar This Action Because § 1983 is an Expressly Authorized Exception:** The R&R's conclusion that "no statute authorizes intervention" is a clear misstatement of the law.

The Supreme Court held in *Mitchum v. Foster*, 407 U.S. 225, 242–43 (1972), that 42 U.S.C. § 1983 is an "expressly authorized" exception to the Anti-Injunction Act, 28 U.S.C. § 2283. Federal courts are empowered to enjoin state proceedings where necessary to protect federal rights. Plaintiff's lawsuit is a quintessential § 1983 action, alleging that state actors conspired to violate her and her child's constitutional rights to due process and familial integrity. The relief sought falls squarely within the *Mitchum v. Foster* exception, and the R&R's failure to apply this controlling precedent is a clear error of law.

2. **Younger Abstention is Inapplicable Due to Bad Faith and Extraordinary Circumstances:** Even if abstention were a consideration, the R&R did not apply the well-established exceptions to the *Younger* abstention doctrine. Federal courts must not abstain where state proceedings are initiated in "bad faith, or to harass," or where other "extraordinary circumstances" exist that would make abstention inappropriate. *Younger v. Harris*, 401 U.S. 37, 53–54 (1971). Plaintiff has alleged a pattern of conduct by state actors and opposing counsel that demonstrates the state proceedings are fundamentally unfair and incapable of providing an adequate forum to vindicate her federal rights.

3. The state proceedings are marked by profound bad faith. As alleged in Plaintiff's Objections, opposing counsel has admitted on the record to

accessing and weaponizing the confidential and protected health information (PHI) of Plaintiff by reviewing her therapy schedule. This conduct is not a legitimate litigation tactic; it is an act of harassment intended to intimidate Plaintiff and prejudice the state court. The state court's allowance of this conduct constitutes a state-sanctioned violation of Plaintiff's constitutional right to privacy in her medical records.

4. Furthermore, Plaintiff, as a *pro se* litigant, has been deliberately excluded from critical case communications between CYS counsel, opposing counsel, and other court-appointed officials. This exclusion denies her a meaningful opportunity to be heard in violation of the Fourteenth Amendment's procedural due process guarantee. *See Parker v. Turner*, 626 F.2d 1, 3 (6th Cir. 1980) (recognizing the right to be heard at a meaningful time and in a meaningful manner as fundamental in custody matters). When a party is deliberately shut out of the very communications that determine her child's welfare, the state forum cannot be considered adequate.

B. **New Evidence of Bad Faith and Fraudulent Conduct Further Precludes Abstention**

5. Subsequent to the events detailed in the initial Objections, Plaintiff has uncovered new evidence that demonstrates the state court proceedings are not merely flawed, but are actively being corrupted by fraud. This

conduct is the very definition of "bad faith" and "extraordinary circumstances" that render *Younger* abstention improper.

6. **Fraudulent Custody Order.** On March 14, 2025, a "stipulated" custody order was entered by the state court despite the fact that Plaintiff never reviewed, approved, or signed the document. After Plaintiff refused to sign the proposed order, opposing counsel unilaterally removed the signature lines and submitted the order directly to the court for entry. This action constitutes a classic fraud upon the court, resulting in a void order that has improperly governed custody and prejudiced Plaintiff's constitutional rights to the care, custody, and control of her child.

7. **Coercion and Duress.** This fraudulent order was the culmination of a coercive campaign. Plaintiff only considered the terms contained in the unsigned order under extreme duress, as she was forced to bargain for unsupervised visitation in exchange for ensuring her minor child could begin critical trauma therapy and being fearful of being labeled as difficult. A child's need for therapy to extract concessions is a hallmark of post-separation abuse and further demonstrates that the state proceedings are being used as a tool for harassment, not for the fair adjudication of rights.

8. **Ongoing Pattern of Systemic Failures.** The fraudulent order is not an isolated event. It is part of a continuing pattern of systemic failure by state actors, including the documented refusal of Luzerne County CYS

to meaningfully investigate credible allegations of child abuse and the failure of the District Attorney's office to prosecute domestic violence or enforce Protection from Abuse restrictions. These are not mere legal errors; they are a pattern of deliberate indifference that proves the state forum is structurally incapable of protecting Plaintiff's federal constitutional and statutory rights. This new evidence of a fraudulent, court-entered order is the most powerful proof yet that the state process is fundamentally unfair and that abstention would result in manifest injustice.

C. **The Rooker-Feldman Doctrine is Inapplicable.**

9. The R&R also misapplies the narrow *Rooker-Feldman* doctrine. This doctrine applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Plaintiff is not a state-court loser seeking appellate review of a final state judgment. Rather, she is challenging the fraudulent and unconstitutional conduct of the Defendants that *led to* state court orders and continues to cause prospective harm. Her injuries are caused by the Defendants' conspiracy, not by the judgment itself. When a federal plaintiff alleges a state judgment was procured by fraud, as Plaintiff has done here with the March 14, 2025 order, *Rooker-Feldman* does not bar jurisdiction. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 170 (3d Cir. 2010).

### D. Federal Statutes Provide an Independent Basis for Intervention.

10. The R&R further erred by failing to address the applicability of federal and state statutes that impose mandatory safeguards in cases involving domestic violence and child safety, such as the Violence Against Women Act (VAWA), 34 U.S.C. § 12291, and Pennsylvania's Kayden's Law, 23 Pa. C.S. § 5329.1. Plaintiff alleges ongoing violations of these statutory mandates. The systematic failure of state actors to follow these laws provides an independent basis for federal oversight under § 1983 and weighs heavily against abstention.

### E. Plaintiff Satisfies the Standard for a Temporary Restraining Order.

11. The Court should grant a TRO to enjoin the Defendants from continuing their unconstitutional actions. A TRO is warranted where the plaintiff shows (1) a reasonable probability of eventual success on the merits; (2) that she will be irreparably injured if relief is not granted; (3) the potential for greater harm to the plaintiff than the defendant; and (4) that the public interest favors the injunction. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). **Plaintiff and her child will suffer immediate and irreparable harm if the injunction is not granted.**

12. The violation of constitutional rights—particularly First Amendment rights and the fundamental right to familial integrity—constitutes irreparable harm *per se*. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). This harm is not theoretical; it is imminent. A state court PFA hearing

is scheduled for **September 9, 2025**. The recent procurement of a fraudulent custody order proves that the state process is being actively manipulated. Without a TRO from this Court, Plaintiff will be forced to participate in the very state court process she alleges is unconstitutional and tainted by fraud, resulting in a violation of her fundamental rights *before* this Court has an opportunity to rule. Forcing a litigant to submit to a proceeding corrupted by such conduct is the essence of irreparable injury. The purpose of a TRO is to preserve the status quo, and in this case, that means enjoining the state defendants from proceeding with the September 9th hearing until the serious constitutional questions raised in this action can be properly adjudicated.

F. **Plaintiff has demonstrated a likelihood of success on the merits.**

13. As argued above, the jurisdictional and abstention doctrines relied upon by the R&R are inapplicable due to clear legal error and the well-pleaded allegations of fraud and bad faith, now substantiated by the fraudulent March 14, 2025, order. Plaintiff's First Amendment retaliation, due process, and malicious prosecution claims are supported by detailed factual allegations that, when taken as true, establish a clear probability of success.

G. **The balance of equities and the public interest strongly favor granting the injunction**

14. The harm to Plaintiff and her child—the ongoing deprivation of their constitutional rights in a bad-faith proceeding—far outweighs any harm to the Defendants, who have no legitimate interest in perpetuating a fraudulent and unconstitutional state court process. The public interest is profoundly served by ensuring the integrity of the judicial process, preventing state actors from abusing their power, and upholding the supremacy of federal constitutional and statutory rights.

### III.   CONCLUSION

The events that have transpired since the Magistrate Judge issued the Report and Recommendation have provided this Court with a clear, undeniable record of bad faith, harassment, and systemic bias in the state court proceedings. The state forum has proven incapable of providing an adequate remedy for the ongoing violation of Plaintiff's constitutional rights and its proceedings are being used not to protect a child, but to retaliate against a mother for reporting abuse and institutional misconduct. This is precisely the great and immediate irreparable injury that federal injunctive relief is designed to prevent.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

1. **REJECT** the Magistrate Judge's Report and Recommendation
2. **GRANT** Plaintiff's Motion for a Temporary Restraining Order enjoining the September 9, 2025, state court hearing
3. **PROVIDE** any other relief the Court deems just and proper.

Respectfully submitted,



Courtney Miller

538 Luzerne Avenue Apt 2

West Pittston, PA, 18643

570-592-1399

courtney_innocenti@yahoo.com

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT COURT OF PENNSYLVANIA

| | |
|---|---|
| Courtney Miller<br><br>Plaintiff,<br><br>vs.<br><br>Eric Miller, Luzerne County, Luzerne County Children and Youth Services, The Luzerne County District Attorney Office, Joseph E. Mariotti Esq.<br><br>Defendants, | NO. 3: 2025 CV 01454 |

### CERTIFICATE OF SERVICE

I, Courtney Miller, hereby certify that on this 2nd day of September 2025, a true and correct copy of the **PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF OBJECTIONS TO THE REPORT AND RECOMMENDATION AND MOTION FOR TEMPORARYRESTRAINING ORDER** was filed with the Clerk of Court. I have requested that the United States Marshals Service serve a copy of this Motion and any accompanying documents on the Defendants pursuant to Federal Rule of Civil Procedure 4(c) (3).

Respectfully Submitted,

*Courtney Miller*

Courtney Miller, Pro-Se

September 2nd, 2025