IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT COURT OF PENNSYLVANIA

| | |
|---|---|
| Courtney Miller <br><br> Plaintiff, <br><br> vs. <br><br> Eric Miller, Luzerne County, Luzerne County Children and Youth Services, The Luzerne County District Attorney Office, Joseph E. Mariotti Esq. <br><br> Defendants, | NO. 3: 2025 CV 01454 <br><br><br> **FILED** <br> **SCRANTON** <br><br> SEP 02 2025 <br><br> PER _____ <br> DEPUTY CLERK |

## AMENDED CIVIL RIGHTS COMPLAINT

Plaintiffs Courtney Miller, individually and as mother and next friend of P.M., a minor (collectively, "Plaintiffs"), by and through herself as pro se counsel, brings this action for damages and injunctive relief against the Defendants, and in support thereof, alleges as follows:

I. **PRELIMINARY STATEMENT**

1. This is a civil rights action for damages and equitable relief brought pursuant to 42 U.S.C. § 1983 for the deprivation of rights, privileges, and immunities secured by the Fourteenth Amendment to the United States Constitution. This action also brings

supplemental state law claims for abuse of process and intentional infliction of emotional distress under the laws of the Commonwealth of Pennsylvania.

2. Defendants, acting in concert and under color of state law, have engaged in a coordinated pattern of obstruction, retaliation, witness intimidation, fraud, evidence suppression, and litigation abuse designed to punish Plaintiff for reporting domestic violence and child abuse. This campaign has included the fabrication of a court order, the obstruction of a child abuse investigation, the weaponization of the judicial process by a private attorney, and the suppression of Plaintiff's due process rights, all constituting a conspiracy to chill her access to the courts and shield an abuser from accountability. Furthermore, custody and PFA proceedings have been weaponized as tools of coercive control and post separation abuse.

3. Plaintiff brings this action both individually and on behalf of her minor daughter, P.M, whose safety, wellbeing, and constitutional rights have been directly infringed.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

5. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as they arise from the same common nucleus of operative facts as the federal claims.

6. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims occurred within this district, and all Defendants reside in or are located in this district.

## III. PARTIES

7. **Plaintiff Courtney Miller** is an adult citizen of the Commonwealth of Pennsylvania and is the mother and sole legal custodian of the minor child, P.M.

8. **Plaintiff P.M.** is a minor child, born March 28, 2021. Plaintiff Jane Doe brings this action on her behalf as her mother and "next friend" pursuant to Federal Rule of Civil Procedure 17(c).

9. **Defendant Eric Miller** ("Defendant Miller") is an adult citizen of the Commonwealth of Pennsylvania and is the ex-husband of Plaintiff Jane Doe and the father of P.M. He is sued in his individual capacity.

10. **Defendant Luzerne County** is a political subdivision of the Commonwealth of Pennsylvania, responsible for the policies, practices, and oversight of its various departments, including the District Attorney's Office and Children and Youth Services.

11. **Defendant Luzerne County Children and Youth Services** ("CYS") is the county agency responsible for investigating child abuse and ensuring child welfare. It is a department of Defendant Luzerne County.

12. **Defendant The Luzerne County District Attorney's Office** ("DA's Office") is the agency responsible for prosecuting criminal offenses within Luzerne County. It is a department of Defendant Luzerne County.

13. **Defendant Joseph E. Mariotti, Esq.** ("Defendant Mariotti") is an attorney licensed in the Commonwealth of Pennsylvania and is counsel for Defendant Miller in the underlying state court proceedings. He is sued in his individual capacity for his actions in conspiring with state actors.

## IV. FACTUAL ALLEGATIONS

### A. Domestic Violence and Initial Failures of the Justice System

14. On or about October 23, 2023, Defendant Miller violently assaulted and strangled Plaintiff in the presence of their then-two-year-old daughter, P.M., causing her to suffer a dislocated clavicle and cervical disc protrusions

15. Following the assault, Plaintiff obtained a Protection from Abuse (PFA) order. Criminal charges were filed against Defendant Miller.

16. An Assistant District Attorney in the Luzerne County DA's Office initially assured Doe that the charges against Miller would be upgraded to felony strangulation due to the severity of the assault and injuries.

17. However, without explanation, the DA's Office subsequently refused to pursue the felony charge, an early indication of the office's failure to protect Doe and prosecute her abuser appropriately.

**B. Witness Intimidation and Coerced Settlement**

18. In September 2024, after Plaintiff opposed an improper offer of Accelerated Rehabilitative Disposition (ARD) for Defendant Miller, her then-counsel received a threatening phone call from First Assistant District Attorney Tony Ross.

19. In that call, ADA Ross attempted to intimidate Doe and her counsel from proceeding, asking, "does she really want to testify?" and threatening Doe's pro bono attorney with professional retaliation by asking, "well do you ever want to get another plea deal again?"

20. This act of intimidation was undertaken pursuant to a custom of the DA's office to pressure domestic violence victims into resolutions that minimize the severity of abuse and avoid trial.

21. As a direct result of this act of official intimidation, Plaintiff's demanded that her counsel withdraw, leaving her unrepresented at a critical juncture.

22. Shortly thereafter, Defendant Mariotti, attorney for Defendant Miller, approached the now-unrepresented Plaintiff with an unlawful settlement offer: $30,000 from Miller's pension and signed divorced papers in exchange for Plaintiff's agreement to drop the criminal charges to a summary offense.

23. Plaintiff signed this agreement under extreme duress, desperate to be removed from a health insurance plan that was being utilized to stalk her therapy frequency.

**C. Fabrication of a Fraudulent Court Order**

24. On March 14, 2025, a "stipulated" custody order was entered in the Luzerne County Court of Common Pleas. This order was procured through fraud and without Plaintiff's consent.

25. Email evidence confirms that Defendant Mariotti knowingly submitted the proposed order to the court after unilaterally removing the signature lines for Plaintiff and her counsel, stating to the Judge's chambers, "I removed the signature lines. ... after signing, John's client never returned her signature."

26. The state court accepted and entered this unsigned document as a valid, stipulated order.

27. The entry and enforcement of this fraudulent order constituted a fundamental violation of Plaintiff's procedural due process rights.

28. Defendant Mariotti later admitted on record in open court that he and Defendant Miller were using access to an insurance portal to monitor Plaintiff's therapy appointments, weaponizing her protected health information against her.

**D. Conspiracy to Obstruct a Child Abuse Investigation**

29. In June 2025, after P.M., disclosed that she was being left unattended, exposed to a firearm, and coerced into silence by Defendant Miller, Plaintiff reported child safety concerns to ChildLine not just as a mother, but as a mandated reporter herself.

30. In July, 2025, Plaintiff was contacted by Stephen McGough, a CPS caseworker for CYS, informing her of another ChildLine report but one including physical acts of child abuse.

31. In furtherance of this conspiracy, Defendant CYS, through its agents, engaged in a pattern of deliberate indifference and obstruction, pursuant to a policy or custom of failing to properly investigate abuse allegations involving an ongoing custody dispute. These acts included: a. Failing to notify law enforcement about the physical child abuse report, as required by law, despite CYS case worker McGough explicitly telling Plaintiff this had been done. b. Failing to conduct a meaningful investigation, with caseworker McGough admitting he was unaware of Defendant Miller's documented history of domestic violence, probation status, or the ongoing stalking investigation. c. Failing to reschedule a forensic interview at the Child Advocacy Center (CAC) after the first attempt was unsuccessful due to the child's distress, thereby effectively terminating the investigation. Instead of protecting the minor child, Defendant CYS dismissed the case as "unfounded," and were removed from the state court proceedings as a result. This dismissal shielded its conduct and the misconduct of the other Defendants from judicial review, despite contradictory testimony and unresolved mandated-reporting issues.

32. In furtherance of the conspiracy, Defendant Mariotti engaged in improper ex parte communications with CYS, demonstrating knowledge of confidential ChildLine report

information in court before Plaintiff, the sole legal custodian, had been provided with information despite multiple requests.

33. Instead of protecting the minor child, Defendant CYS, pursuant to its policy and custom, abruptly dismissed the investigation as "unfounded" to shield its conduct and the misconduct of the other Defendants from judicial review.

34. The CYS caseworker responsible for the physical abuse investigation failed to appear at a subsequent PFA hearing despite being subpoenaed, depriving Plaintiff of critical testimony. This failure to appear was consistent with CYS and County policy to avoid scrutiny of its deficient investigations.

### E. Retaliation and Unconstitutional Litigation Abuse

35. In response to Plaintiff's continued efforts to protect her child and assert her rights, Defendants engaged in a campaign of retaliatory litigation abuse.

36. Defendant Miller, through his attorney Defendant Mariotti, filed bad-faith pleadings containing ad hominem attacks designed to harass and intimidate Plaintiff for seeking redress. These filings baselessly attacked Plaintiff's stability and parental fitness, accusing her of a "pattern of alienation" and "misusing the courts."

37. These state actors, with the court's acquiescence, also engaged in procedural manipulation. They scheduled hearings on Defendants' improper pleadings while leaving Plaintiff's properly filed motions—including motions to disqualify Defendant Mariotti, change venue, and hold Defendant Miller in contempt—unaddressed for months.

38. This selective scheduling and refusal to hear Plaintiff's motions was designed to deny her access to the courts and constituted retaliation for her protected activity of reporting abuse and official misconduct.

39. The state court system, through its officials, has consistently enabled this abuse by ignoring Plaintiff's motions challenging systemic misconduct, including her motion to refer the matter to the Pennsylvania Attorney General due to the DA's Office's clear conflict of interest.

F. Municipal Liability: Policy, Custom, and Failure to Train

40. Defendant Luzerne County is liable for the constitutional violations described herein because they were caused by its official policies, customs, and deliberate indifference to the constitutional rights of domestic violence survivors and children.

41. The actions of First Assistant District Attorney Tony Ross, a final policymaker, in intimidating a victim-witness constitute an official policy of the DA's Office and Luzerne County.

42. Defendant Luzerne County, through CYS and the DA's Office, has a widespread custom and practice of: a. Failing to properly investigate allegations of child abuse that arise in the context of contested custody cases; b. Failing to refer credible allegations of child abuse and obstruction to law enforcement as required by law; and c. Intimidating and retaliating against protective parents who report abuse and official misconduct.

43. Defendant Luzerne County has failed to adequately train its CYS caseworkers and Assistant District Attorneys on constitutionally adequate procedures for handling child abuse investigations, protecting victims of domestic violence, and avoiding conflicts of interest. This failure to train amounts to deliberate indifference to the rights of persons with whom they come into contact, including the Plaintiffs.

44. These policies, customs, and failures to train were the moving force behind the violation of Plaintiffs' constitutional rights.

## V. CLAIMS FOR RELIEF

**COUNT I – 42 U.S.C. § 1983 – RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS (Against All Defendants)**

45. Plaintiffs reallege and incorporate by reference paragraphs 1-45 as if fully set forth herein.

46. The First Amendment protects the right of individuals to access the courts for redress of grievances, which includes filing PFA petitions, reporting child abuse to state agencies, and filing motions in court.

47. Plaintiff engaged in constitutionally protected activity by reporting domestic violence and child abuse, seeking court protection, and opposing the misconduct of state officials and their co-conspirators.

48. Defendants took adverse action against Plaintiff that was motivated by her protected activity. This retaliatory conduct, intended to chill a person of ordinary firmness from continuing their protected activity, included: a. Witness intimidation by a final policymaker of the DA's Office; b. The obstruction and termination of the CYS investigation immediately after Plaintiff persisted in her abuse allegations; and c. The filing of malicious and harassing pleadings and the systemic refusal to adjudicate Plaintiff's motions.

49. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiffs' constitutional rights were violated, and they suffered significant harm.

**COUNT II – 42 U.S.C. § 1983 & 1985(3) – CONSPIRACY TO VIOLATE CIVIL RIGHTS (Against All Defendants)**

50. Plaintiffs reallege and incorporate by reference paragraphs 1-45 as if fully set forth herein.

51. Defendants entered into an agreement, express or implied, to deprive Plaintiffs of their constitutional rights to due process and access to the courts. The object of the conspiracy was to obstruct the child abuse investigation, shield Defendant Miller from accountability, and punish Plaintiff for reporting abuse.

52. In furtherance of the conspiracy, Defendants committed numerous overt acts, including but not limited to: CYS's failure to refer the abuse report to police; the DA's Office's witness intimidation; Defendant Mariotti's submission of a fraudulent court order; and the coordinated effort to terminate the CYS investigation.

53. The conspiracy was motivated by an animus against Plaintiff as a member of a class of women and protective mothers who report domestic violence and child abuse, depriving her of the equal protection of the laws.

54. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff's constitutional rights were violated, and they suffered significant harm.

## COUNT III – ABUSE OF PROCESS (Supplemental State Law Claim) (Against Defendants Miller and Mariotti)

55. Plaintiffs reallege and incorporate by reference paragraphs 1-45 as if fully set forth herein.

56. Defendants Miller and Mariotti have used the legal process, including the filing of retaliatory pleadings and the enforcement of a fraudulent court order, primarily to accomplish a purpose for which the process was not designed.

57. The primary purpose of their actions was not to legitimately litigate custody but to harass, intimidate, punish, and gain a collateral advantage over Plaintiff, namely, to silence her reporting of abuse and obstruct justice.

58. As a direct result of this abuse of process, Plaintiffs have suffered harm, including severe emotional distress, financial loss, and the deprivation of procedural rights.

## COUNT IV – MALICIOUS PROSECUTION (State Law) (Against Defendants Miller and Mariotti)

59. Plaintiffs reallege and incorporate by reference paragraphs 1-45 as if fully set forth herein.

60. Defendants Miller and Mariotti initiated retaliatory and baseless legal proceedings against Plaintiff in state court without probable cause.

61. These proceedings were instituted with malice and for the improper purpose of harassing and retaliating against Plaintiff.

62. The proceedings have terminated in Plaintiff's favor or in a manner indicative of her innocence of the wrongful allegations made therein.

63. As a result of their malicious prosecution, Plaintiff has suffered injury to her reputation, emotional distress, and incurred litigation costs.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) (Supplemental State Law Claim) (Against All Defendants)

64. Plaintiffs reallege and incorporate by reference the facts set forth in paragraphs 1-42 above.

65. Defendants' conduct—including the official witness intimidation, fabrication of a court order, unlawful surveillance, obstruction of a child abuse investigation, and relentlessly malicious litigation abuse—was extreme and outrageous, exceeding all possible bounds of decency in a civilized community.

66. Defendants acted intentionally or recklessly with the purpose of causing, or with reckless disregard of the probability of causing, severe emotional distress to Plaintiffs.

67. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered severe emotional distress, including diagnosed PTSD, ongoing trauma, and loss of safety and stability.

68. The minor child P.M. has likewise suffered emotional harm and distress caused by the systemic manipulation and the failure of the Defendants to protect her.

**COUNT VI – CIVIL CONSPIRACY (Supplemental State Law Claim) (Against All Defendants)**

69. Plaintiffs reallege and incorporate by reference paragraphs 1-45 as if fully set forth herein.

70. Two or more Defendants combined and agreed to commit unlawful acts or to commit lawful acts by unlawful means, namely to obstruct justice and deprive Plaintiffs of their rights.

71. Defendants committed overt, unlawful acts in furtherance of the conspiracy.

72. As a direct and proximate result of the conspiracy, Plaintiffs have sustained actual legal damages.

VI.  **PRAYER FOR RELIEF**

**WHEREFORE,** Petitioner respectfully requests that this Court enter judgment in her favor and against Respondents, and grant the following relief:

1. **Declaratory Judgment** that Defendants' acts, policies, and practices violated Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution

2. **Immediate Injunctive Relief:** including an order: 1. Enjoining Defendants from engaging in further retaliatory conduct or abusing the legal process to harass and intimidate Plaintiffs; and 2. Prohibiting Defendants from accessing, using, or disclosing Plaintiffs' or the minor child's personal records, therapy records, or electronic communications without lawful process and independent court approval

3. **Compensatory Damages** in an amount to be determined at trial for the emotional distress, financial loss, and other injuries suffered by Plaintiffs as a result of Defendants unlawful conduct.

4. **Punitive Damages** against the individual Defendants (Miller and Mariotti) in an amount sufficient to correct their willful and malicious conduct and to deter similar conduct in the future

5. **Attorney's Fees and Costs** pursuant to 42 U.S.C. § 1988, or in the alternative, provide equitable relief recognizing that Petitioner's pro se status should not preclude recovery of costs where misconduct by Respondents necessitated this litigation

6. **Such Other and Further Relief** as this Court deems just and proper to protect the rights of Petitioner and her child, including referral of this matter to appropriate disciplinary authorities or federal oversight bodies if warranted.

### VII.    DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

*Courtney Miller*
Courtney Miller, Pro Se

September 2, 2025

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT

COURT OF PENNSYLVANIA

| Courtney Miller | NO. 3: 2025 CV 01454 |
|---|---|
| Plaintiff, | |
| vs. | |
| Eric Miller, Luzerne County, Luzerne County Children and Youth Services, The Luzerne County District Attorney Office, Joseph E. Mariotti Esq. | |
| Defendants, | |

## CERTIFICATE OF SERVICE

I, Courtney Miller, hereby certify that on this 2nd day of September 2025, a true and correct copy of the **AMENDED CIVIL RIGHTS COMPLAINT** was filed with the Clerk of Court. I have requested that the United States Marshals Service serve a copy of this Motion and any accompanying documents on the Defendants pursuant to Federal Rule of Civil Procedure 4(c) (3).

Respectfully Submitted,

*Courtney Miller*
Courtney Miller, Pro Se
September 2nd, 2025