IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COURTNEY MILLER, | : Civil No. 3:25-CV-1454 |
| | : |
| Plaintiff, | : |
| | : |
| | : (Judge Saporito) |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| ERIC MILLER, et al., | : |
| | : |
| Defendants. | : |

## REPORT AND RECOMMENDATION

I.    Introduction

This is a civil action filed by the *pro se* plaintiff, Courtney Miller.[1]

Miller's claims arise out of state court custody and divorce proceedings in

Luzerne County, Pennsylvania.[2]    According to her third amended

complaint, Miller brings this action against Eric Miller, her ex-husband;

Luzerne County; and an unidentified number of John and Jane Doe

county officials.[3]    She asserts her claims pursuant to 42 U.S.C. § 1983,

alleging that the county and unidentified defendants conspired to deprive

---

[1]  Doc. 1.

[2]  *Id.*

[3]  Doc. 40.   Miller previously named Luzerne County Children and Youth
Service, the District Attorney's Office, and Attorney Joseph Mariotti in
as defendants but has not named these defendants in her third amended
complaint.   As such, these defendants should be dismissed.

her of procedural and substantive due process, equal protection, and access to the courts, and retaliated against her during family court divorce and custody proceedings.[4]   She also brings state law tort claims against Defendant Eric Miller.[5]

Miller also filed several motions for a temporary restraining order ("TRO").[6]   In her first motion for TRO[7] and supplemental documents, Miller details the unfavorable rulings she received in the underlying state family court matters, including denial of her motions to continue or to stay the state court proceedings and to refer the matter to the Pennsylvania Attorney General's Office.[8]   She ultimately requests this court's intervention in the state matter by enjoining further custody and protection from abuse proceedings until her motion to refer the matter to

---

[4] *Id.*
[5] *Id.*
[6] Docs. 2, 8, 11, 21, 36, 38.
[7] We initially addressed this motion for TRO by way of a Report and Recommendation to the district court.   *See* Doc. 6.   That Report and Recommendation was ultimately not adopted by the district court, and the matter was remanded to the undersigned for further consideration of the TRO and supplemental filings, as well as for a mandatory screening review of the plaintiff's amended complaint.   *See* Doc. 29.
[8] Docs. 2, 8, 11.

the Attorney General's Office is addressed.[9]   In her second motion for TRO, Miller similarly requests some intervention in the family court proceedings, in that she asks this court to reinstate prior visitation conditions for her ex-husband and facilitate communication between the plaintiff and the guardian ad litem ("GAL") appointed to represent her child.[10]   This second motion also encompasses claims and requested relief on behalf of Courtney Voyton, who has filed her own, separate action regarding her underlying family court matters.[11]   Miller's most recently filed motion requests similar relief based on similar allegations of ongoing violations of her rights during these state court proceedings.[12]

After consideration, we will recommend that the third amended complaint be dismissed, and the motions for TRO be denied.

## II.   Background

Miller's third amended complaint, which is currently the operative pleading, details her ongoing family court proceedings and underlying

---

[9]  Doc. 11 at 5.
[10]  Doc. 21 at 6-7.
[11]  *Id.*
[12]  Doc. 36.

domestic disputes with her ex-husband. Thus, Miller alleges that in October of 2023, Defendant Eric Miller assaulted her in front of their minor child.[13] Although the Luzerne County District Attorney's Office declined to charge Eric Miller with a felony, Courtney Miller received a protection from abuse ("PFA") order for herself and her child, which she contends was never enforced.[14] She asserts that her child developed post-traumatic stress disorder ("PTSD") as a result of witnessing the assault.[15]

The amended complaint then jumps to June of 2025, at which time Miller's child made multiple concerning disclosures regarding Eric Miller, which the plaintiff reported to ChildLine and Children and Youth Services ("CYS").[16] In July, the plaintiff was informed that someone made a ChildLine report regarding physical abuse, which was referred to Child Protective Services and law enforcement.[17] But the plaintiff contends that law enforcement was never actually notified, and that

---

[13] Doc. 40 ¶ 8.
[14] *Id.* ¶¶ 9-11.
[15] *Id.* ¶ 14.
[16] *Id.* ¶¶ 16-17.
[17] *Id.* ¶ 18.

4

additional reports to ChildLine were concealed or misrepresented. [18] Miller further alleges CYS refused to communicate with her and closed the case as unfounded.[19]   She also accuses CYS of engaging in improper ex parte communications with her ex-husband's attorney.[20]

The plaintiff further alleges that county officials deprived Miller of her property rights when they terminated her spousal support in 2024 based on what she claims was a defective marital settlement agreement ("MSA").[21]   She asserts that this MSA was executed while she was unrepresented, and that the county erroneously relied on this MSA rather than the Divorce Decree, which resulted in a deprivation of her property rights.[22]   Miller claims the county court entered a "stipulated" order that she never agreed to, which Miller believes falsely represented that Eric Miller had completed required evaluations.[23]   Miller also alleges that the county failed to provide her with adequate notice, which

---

[18]  *Id.* ¶¶ 19-20.
[19]  *Id.* ¶¶ 22-23.
[20]  *Id.* ¶ 27.
[21]  *Id.* ¶¶ 32-44.
[22]  *Id.* ¶¶ 45, 48-51.
[23]  *Id.* ¶¶ 52-62.

deprived her of a meaningful opportunity to be heard in her state court proceedings.[24]

Finally, Miller's amended complaint alleges that after she reported issues concerning the investigation and procedural hurdles she was encountering, as well as safety issues, the county "escalated adverse actions, including ignoring motions, relying on incomplete records, and proceeding without necessary testimony."[25]   She contends that she was forced to communicate with the GAL through opposing counsel; forced to pay the GAL's fee; hindered from obtaining new counsel; and her complaints of suspected intrusions into her electronic devices went ignored.[26]   Miller alleges that these actions were taken in retaliation for her reporting abuse and filing criminal complaints.[27]

Based on these averments, Miller brings her claims against the county and the John and Jane Doe county officials pursuant to Section 1983, alleging violations of procedural and substantive due process,

---

[24] *Id.* ¶¶ 63-68.
[25] *Id.* ¶ 69.
[26] *Id.* ¶¶ 69-79.
[27] *Id.* ¶ 74.

6

retaliation and denial of access to the courts, equal protection violations, and conspiracy.[28]    Miller also brings a municipal liability claim against the county.[29]    As to Eric Miller, the plaintiff asserts state law claims of abuse of process and intentional infliction of emotional distress.[30]    As relief, she seeks a preliminary injunction, declaratory relief, and compensatory and punitive damages.[31]

After consideration, we conclude that the third amended complaint fails to state a claim upon which relief can be granted.    Accordingly, we will recommend that the third amended complaint be dismissed, and the motions for TRO be denied.

## III.    Discussion

### A. Miller's Third Amended Complaint Should be Dismissed.

We have a statutory obligation to preliminarily review *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis*.[32]    We review such complaints to determine whether there are

---

[28]  *Id.* at 17-24.

[29]  *Id.* at 20-22.

[30]  *Id.* at 24-26.

[31]  *Id.* at 26-27.

[32]  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

7

frivolous or malicious claims, or if the complaint fails to state a claim upon which relief may be granted. [33]   This statutory preliminary screening mirrors review under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."[34]

With respect to this legal benchmark, under federal pleading standards a plaintiff is required to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." [35] In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations in the complaint as true and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant."[36]   However, a court is not required to accept legal conclusions or "a formulaic recitation of the elements of a cause of action."[37]

---

[33] *Id.*

[34] Fed. R. Civ. P. 12(b)(6).

[35] Fed. R. Civ. P. 8(a)(2).

[36] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

[37] *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

As the Third Circuit Court of Appeals has aptly summarized:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*[38]

Generally, when considering a motion to dismiss, a court relies on the complaint and its attached exhibits, as well as matters of public record.[39] A court can also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the

---

statements, do not suffice").

[38] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

[39] *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

plaintiff's claims are based on the [attached] documents." [40] Additionally, if the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider such document in its determination.[41] However, the court may not rely on any other part of the record when deciding a motion to dismiss.[42]

Finally, when reviewing a *pro se* complaint, we are reminded that such complaints are to be construed liberally, "so 'as to do substantial justice.'"[43]   We must apply the relevant law even if the *pro se* plaintiff does not mention it by name.[44]

After consideration, we conclude that Miller's claims fail to state a claim upon which relief can be granted.   The plaintiff first asserts a claim that the county and its officials violated her procedural due process

---

[40] *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[41] *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

[42] *Jordan*, 20 F.3d at 1261.

[43] *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (quoting Fed. R. Civ. P. 8(f)).

[44] *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)).

rights by depriving her of her custody interests and spousal support, and by not providing her with a meaningful opportunity to be heard in the family court proceedings.   But after review, we conclude that these claims should be barred by the *Younger* abstention doctrine, as it appears from the plaintiff's filings that these matters are currently pending before the state court.

As the Third Circuit has explained, "*Younger* abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding."[45]   The doctrine contemplates three legal requirements that must be met before a court exercises its discretion to abstain: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims."[46]

---

[45] *Kendall v. Russell*, 572 F.3d 126, 130 (3d Cir. 2009) (citing *Younger v. Harris*, 401 U.S. 37, 41 (1971)).
[46] *Kendall*, 572 F.3d at 131 (citing *Matusow v. Trans–County Title Agency*, LLC, 545 F.3d 241, 248 (3d Cir. 2008)).

Here, Miller's claims explicitly arise out of her family court proceedings. Based on Miller's filings, it appears there is a hearing scheduled for February 19, 2026, to address the outstanding motions in state court.[47] Thus, the requirements for *Younger* abstention—ongoing state proceedings that implicate important state interests and give the plaintiff an adequate opportunity to raise her claims—are met. Given the paramount importance to the state of the enforcement and resolution of child custody and divorce matters, we believe that we should exercise our discretion to abstain from these claims involving Miller's ongoing state court matters.

Miller also asserts a state-created danger claim, alleging that the county officials' actions or inactions resulted in increased danger to herself and her child, violating her substantive due process rights. This claim appears to be based on Miller's allegations that county officials "misclassified" her complaints of abuse as civil rather than criminal. Generally, the state does not have an affirmative duty to protect citizens

---

[47] Doc. 41-4 at 50.

12

from the actions of private individuals.[48]   However, an exception exists

when "the state acts to create or enhance a danger that deprives the

plaintiff of his or her Fourteenth Amendment right to substantive due

process."[49]

> To prevail on a state-created danger theory, a plaintiff must show:
>
> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.[50]

The Third Circuit has noted the significance of the affirmative act

requirement, which "distinguishes cases where officials might have done

---

[48] *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198-200 (1989).

[49] *Sanford v. Stiles*, 456 F.3d 298, 304 (3d Cir. 2006) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996) (emphasis in original)).

[50] *Sanford*, 456 F.3d at 304-04 (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)) (internal quotation marks and footnotes omitted) (emphasis added).

more from cases where officials created or increased the risk itself."[51]

Thus, the Court has continued to find that "an alleged failure *to do something*, standing alone, cannot be the basis for a state-created danger claim."[52]

Here, while Miller attempts to couch her claims in terms of state action, the gravamen of her allegations is the county's *inaction*—that the county failed to take certain actions or precautions, or failed to investigate her complaints, which she claims led to an increased danger to herself and her child.    Accordingly, we conclude that the third amended complaint fails to state a state-created danger claim against the defendants and should be dismissed.

Next, Miller asserts claims under the First Amendment, alleging that the county officials violated her right of access to the courts and retaliated against her for filing motions, complaints, and reports of

---

[51] *G.S. v. Penn-Trafford Sch. Dist.*, 813 F. App'x 799, 802 (3d Cir. 2020) (quoting *Morrow*, 719 F.3d at 179).

[52] *Johnson v. City of Phila.*, 975 F.3d 394, 400-01 (3d Cir. 2020) (citing *Burella v. City of Phila.*, 501 F.3d 134, 146–47 (3d Cir. 2007) (police officers' failure to intervene in domestic-violence situation did not satisfy element four)).

14

abuse. She asserts that after she reported instances of domestic violence and abuse, county officials "escalated adverse actions, including ignoring motions, relying on incomplete records, and proceeding without necessary testimony."[53] She also takes issue with the GAL requirements, in that she was required to pay half of the GAL's fee and to communicate with the GAL through opposing counsel, since she was unrepresented.[54] According to Miller, these actions were taken in retaliation for her reporting abuse and filing complaints.

To state an access-to-courts claim, a plaintiff "must establish that [s]he was denied access to the courts and that [s]he suffered an actual injury as a result."[55] A plaintiff asserting that she was prohibited from presenting a claim must show "(1) that [she] suffered an 'actual injury'—that [she] lost a chance to pursue a 'nonfrivolous' or 'arguable" underlying claim; and (2) that [she] ha[s] no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access

---

[53] Doc. 40 ¶ 69.

[54] *Id.* ¶ 76, 79.

[55] *Bacon v. Taylor*, 414 F. Supp. 2d 475, 481 (D. Del. 2006) (citing *Hudson v. Robinson*, 678 F.2d 462, 466 (3d Cir. 1982)).

suit."[56]    Here, the third amended complaint does not allege that Miller

lost an opportunity to present her claims—she merely alleges that some

of her motions were ignored or were decided against her, and that she

was unable to find counsel to represent her.    Additionally, while Miller

takes issue with the way in which she was required to communicate with

the GAL, she does not allege that this caused her an actual injury, in that

she was unable to assert her claims in state court.    Thus, we conclude

that the third amended complaint fails to state an access-to-courts claim.

Similarly, Miller fails to allege sufficient facts to state a retaliation

claim.    To state a retaliation claim under the First Amendment, the

plaintiff must show: (1) that she engaged in constitutionally protected

conduct; (2) that she suffered "retaliatory action sufficient to deter a

person of ordinary firmness from exercising his constitutional rights";

and (3) a causal connection between the protected activity and the

retaliatory act.[57]    Even assuming the plaintiff can establish the first two

---

[56] *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

[57] *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

elements, she has not sufficiently alleged a causal connection between her protected activity and any adverse action taken against her.   Miller states in a wholly conclusory fashion that the alleged adverse actions "occurred after Plaintiff engaged in protected activity, including reporting abuse, filing criminal complaints, and seeking court protection."   But the amended complaint does not indicate when the plaintiff engaged in this protected activity relative to when the alleged adverse actions occurred.   From the allegations that do contain timeframes, it appears that at least some of the alleged adverse actions, *e.g.*, the conduct regarding the marriage dissolution and supporting documents, occurred *before* the plaintiff engaged in protected activity.[58] Accordingly, we cannot conclude that the amended complaint sufficiently sets forth allegations supporting a First Amendment claim.

Miller also attempts to assert an equal protection claim, alleging that the county treated her differently than similarly situated individuals "by stereotyping her trauma-driven safety concerns as

---

[58] *See* Doc. 40 ¶ 45-59 (detailing issues with the divorce decree in September of 2024 and March of 2025) and Doc. 40 ¶ 16 (detailing the plaintiff's reports of abuse beginning in June of 2025).

instability," discounting her reports of domestic violence, and imposing the GAL requirements on her, which she claims is the result of "gender-linked stereotypes."[59]   The Fourteenth Amendment provides that no state may "deny to any person within its jurisdiction equal protection of the laws."[60]   To state a claim for discrimination under the Equal Protection clause, the plaintiff must show that she endured purposeful discrimination based on membership in a protected class of individuals.[61] Accordingly, she must establish that she was subjected to "(1) disparate treatment in relation to other similarly situated individuals, and (2) that the discriminatory treatment was based on [the protected characteristic]."[62]   "[A]n equal-protection challenge must allege more than 'broad generalities' in identifying a comparator."[63]   Moreover, "the failure to identify similarly situated persons dooms an equal-protection

---

[59] Doc. 40 at 20.

[60] U.S. Const. amend. XIV § 1.

[61] *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir. 1997).

[62] *Johnston v. Univ. of Pittsburgh of Com. System of Higher Education*, 97 F. Supp. 3d 657, 667 (W.D. Pa. 2015).

[63] *Stradford v. Sec'y Pa. Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2022) (citation omitted).

claim."[64]

Here, Miller's amended complaint does no more than assert "broad generalities" in that she vaguely alleges she was treated differently because of her status as a domestic violence survivor and "a protective mother seeking safety for her child."[65]   The complaint fails to identify any similarly situated individuals, much less establish that the plaintiff was treated differently based on a protected characteristic.   Accordingly, her equal protection claim fails as a matter of law.

Miller's amended complaint also asserts a claim against the county for municipal liability under *Monell*.   A municipal entity may be liable for a constitutional violation under Section 1983 if the violation was a direct result of the entity's policy, custom, or practice.[66]   However, an entity may not be held liable "solely because injuries were inflicted by its agents or employees."[67]   Rather, a plaintiff must demonstrate a "direct

---

[64]  *Id.* (citations omitted).

[65]  Doc. 40 at 20.

[66]  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 695 (1978).

[67]  *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007).

causal link" between the alleged constitutional violation and the municipal policy or custom.[68]   In cases where a plaintiff is alleging a failure to train, the plaintiff must demonstrate that the "municipality's failure to train [individuals] ... amounts to deliberate indifference to the rights of persons with whom [they] come into contact."[69]   To establish such a claim, the plaintiff must demonstrate "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents," coupled with "circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate."[70]

Here, Miller attempts to establish *Monell* liability by asserting that the county's actions or inactions in her case reflect a policy or custom of the county in family court matters.   But Miller's amended complaint contains no factual allegations to support this assertion.   Rather, Miller solely relies on occurrences in her own family court matter, such as

---

[68] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

[69] *Id.* at 388.

[70] *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998) (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997)).

20

misclassifying her complaints of abuse as civil matters, failing to notify law enforcement of abuse complaints, and relying on incomplete records to show that the county has a policy or custom of mishandling custody or divorce matters.    The plaintiff makes one conclusory assertion that the conduct alleged in her case "mirrors the pattern documented in other cases arising from the same County."[71]    Accordingly, we cannot conclude that the alleged actions or inactions establish a policy or custom of the county such that the county would be subject to *Monell* liability.

The plaintiff also asserts a conspiracy claim under Section 1983, alleging that the unnamed county officials agreed to deprive her of her constitutional rights in these state court proceedings.    To allege a conspiracy, a plaintiff must establish "some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." [72]    "It is 'not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged

---

[71] Doc. 40 at 21.

[72] *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (citations and internal quotation marks omitted).

21

perpetrators of the harm acted in conscious parallelism.'" [73]    Here, Miller's allegations fail to establish that any individuals came to an agreement or meeting of the minds to deprive her of her constitutional rights.   Her allegations of "coordinated efforts" to obstruct her rights or "coordinated reliance" on incomplete records, while possibly suggestive of "conscious parallelism," fall short of alleging that any individuals came to a meeting of the minds to violate her constitutional rights. Accordingly, the amended complaint fails to state a conspiracy claim against the John and Jane Doe county officials.

Finally, Miller alleges state law tort claims against her ex-husband, Eric Miller, including abuse of process and intentional infliction of emotional distress.   Because we have concluded that the plaintiff's federal claims fail, this court should decline to exercise supplemental jurisdiction over these state law claims.[74]

---

[73] *Eichelman v. Lancaster County*, 510 F. Supp. 2d 377, 393 (E.D. Pa. 2007) (quoting *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997)).

[74] 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if- ... the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Accordingly, we conclude that Miller's third amended complaint fails to state a claim upon which relief can be granted and should be dismissed.

## B. Miller's Motions for TRO Should be Denied.

Miller has also filed motions for a temporary restraining order.   A plaintiff seeking preliminary injunctive relief must meet exacting substantive requirements.   Federal Rule of Civil Procedure 65 requires a plaintiff to show "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief."[75]  The Supreme Court has underscored that "a preliminary injunction is an extraordinary

---

We also note that Miller has not asserted any federal claim against Defendant Miller, further supporting this court's recommendation to decline supplemental jurisdiction over these state law claims.   *See* *Culver v. Specter*, 2013 WL 5488649 (M.D. Pa. Sept. 30, 2013) (declining to exercise supplemental jurisdiction over state law claims against an individual defendant despite retaining jurisdiction over federal claims against other defendants).

[75] *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citing *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)).

and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."[76]

As discussed above, we have concluded that Miller's third amended complaint fails to state a claim.   Accordingly, the plaintiff cannot show a likelihood that she will succeed on the merits of her claims, and as such, fails to meet the requirements for preliminary injunctive relief at this time.   Thus, her motions for TRO should be denied.

## IV.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that:

1. The plaintiff's motions for TRO and related motions [77] be DENIED; and

2. The plaintiff's third amended complaint be DISMISSED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or

---

[76] *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation and quotation marks omitted).
[77] Docs. 2, 21, 36, 38.

matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 17th day of February 2026.


                              s/ Daryl F. Bloom
                              Daryl F. Bloom
                              Chief United States Magistrate Judge

25