UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

COURTNEY MILLER,

Plaintiff,

v.

ERIC MILLER, et al.,

Defendants.

CIVIL ACTION NO. 3:25-CV-1454

(SAPORITO, J.)
(BLOOM, C.M.J.)

## MEMORANDUM

Now before the court is a report and recommendation of Chief United States Magistrate Judge Daryl F. Bloom, in which he recommends that the plaintiff's third amended complaint (Doc. 40) be dismissed and her motions for TRO and related motions (Doc. 2; Doc. 21; Doc. 36; Doc. 38) be denied. (Doc. 43). The plaintiff timely filed objections to the report and recommendation listing six separate objections. (Doc. 45).

## I.    Judge Bloom's Report and Recommendation

As Judge Bloom notes, this action filed by the *pro se* plaintiff arises out of state court custody and divorce proceedings in Luzerne County, Pennsylvania. The plaintiff brings this action against her ex-husband Eric Miller, Luzerne County, and an unidentified number of John and Jane Doe county officials. She asserts claims pursuant to 42 U.S.C. §

1983, alleging that the county and unidentified defendants conspired to deprive her of procedural and substantive due process, equal protection, and access to courts. Moreover, she contends that they retaliated against her during family court divorce and custody proceedings. The plaintiff also brings state tort law claims against defendant Eric Miller.

Judge Bloom first addressed the plaintiff's claim that the county and its officials violated her procedural due process rights by depriving her of her custody interest and spousal support without affording her a meaningful opportunity to be heard in the family court proceedings. Judge Bloom found that these claims were barred by the *Younger* abstention doctrine because they arise directly from ongoing family court proceedings, and the plaintiff has a hearing scheduled in state court to address the pending motions.[1] *See* (Doc. 43) ("Thus, the requirements for *Younger* abstention—ongoing state proceedings that implicate important state interests and give the plaintiff an adequate opportunity to raise her claims—are met.").

---

[1] Judge Bloom issued his report and recommendation on February 17, 2026. (Doc. 43, at 12). The plaintiff's hearing in state court was scheduled for February 19, 2026. (*Id.*). Therefore, the plaintiff presumably had her hearing at the time of the issuance of this Memorandum.

Next, Judge Bloom considered the plaintiff's state-created danger claim, in which she alleged that the county official's actions or inactions heightened the risk of harm to her and her child in violation of her substantive due process rights. Judge Bloom observed, however, that the allegations centered on the county's failure to act, and that "an alleged failure *to do something*, standing alone, cannot be the basis for a state-created danger claim." (Doc. 43, at 14) (quoting *Johnson v. City of Philadelphia*, 975 F.3d 394, 400—01 (3d Cir. 2020)). Therefore, Judge Bloom recommends that the plaintiff's state-created danger claim be dismissed.

Judge Bloom then addressed the plaintiff's First Amendment claim predicated upon the plaintiff's allegations that county officials denied her access to the courts and retaliated against her for filing motions, complaints, and reports of abuse. Judge Bloom found that the plaintiff failed to allege the loss of an opportunity to pursue or present her claims, as required to state her denial-of-access claim. With respect to the plaintiff's First Amendment retaliation claim, Judge Bloom concluded that the plaintiff failed to plausibly allege a causal connection between any protected activity and an adverse action taken against her as

required for her claim. Accordingly, Judge Bloom recommends dismissal of the plaintiff's First Amendment claims.

Judge Bloom also considered the plaintiff's equal protection claim, in which she alleged that the county treated her differently than similarly situated individuals "by stereotyping her trauma-driven safety concerns as instability," discounting her reports of domestic violence, and imposing requirements based on "gender-linked stereotypes." (Doc. 43, at 17–18) (citing (Doc. 40, at 20)). Judge Bloom concluded, however, that the third amended complaint relied on broad and conclusory allegations of gender discrimination and failed to identify any similarly situated individuals who were treated more favorably than the plaintiff. Accordingly, Judge Bloom recommends dismissal of the equal protection claim.

The plaintiff also asserted a claim against the county for municipal liability under *Monell*, but Judge Bloom found that the plaintiff failed to allege any facts supporting the existence of a policy, custom, or practice that caused the alleged constitutional violations. Specifically, "[t]he plaintiff makes one conclusory assertion that the conduct alleged in her case 'mirrors the pattern documented in other cases arising in the same

County.'" (Doc. 43, at 21).

Judge Bloom further addressed the plaintiff's § 1983 conspiracy claim, in which she alleged that unnamed county officials agreed to deprive her of her constitutional rights in the state court proceedings. Judge Bloom concluded that the plaintiff failed to plausibly allege a necessary element of her conspiracy claim, namely that the unnamed officials reached an agreement or came to a meeting of the minds to violate her constitutional rights. Therefore, Judge Bloom recommends dismissal of these claims.

Judge Bloom also recommends that the court decline to exercise supplemental jurisdiction against the plaintiff's state law tort claims of abuse of process and intentional infliction of emotional distress against her ex-husband, finding that the plaintiff's federal claims fail. In light of his findings, Judge Bloom recommends denying the plaintiff's request for injunctive relief, as her failure to demonstrate a likelihood of success on the merits precludes her from satisfying the standard for preliminary relief.

## II.    The Plaintiff's Objections to the Report and Recommendation

On February 27, 2026, the plaintiff filed her objections to Judge

Bloom's report and recommendation. (Doc. 45). The plaintiff's objections fall into two categories. First, the plaintiff argues that Judge Bloom erred in recommending the dismissal of her claims under the *Younger* abstention doctrine. Second, the plaintiff contends that Judge Bloom erred in recommending the dismissal of her claims based on the merits of those claims.

We first address the plaintiff's *Younger* abstention objection concerning her procedural due process claims. The plaintiff, as she has maintained prior, argues that the *Younger* abstention doctrine is inappropriate because her action "does not seek to modify, overturn, or appeal any custody, support or domestic-relations order." (Doc. 45-1, ¶ 3) (quoting (Doc. 40, at 1)). But we find that no matter how artfully the plaintiff frames her third amended complaint, she cannot escape the fact that her claims explicitly arise out of her pending family court proceedings, ones that fall under the purview of the *Younger* abstention doctrine. As Judge Bloom noted, the *Younger* abstention doctrine contemplates three legal requirements before a court exercises its discretion to abstain: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state

- 6 -

interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Kendall v. Russell*, 572 F.3d 126, 130 (3d Cir. 2009) (citing *Younger v. Harris*, 401 U.S. 37, 41 (1971)).[2] Here, the plaintiff's third amended complaint implicates all three requirements. The allegations concern ongoing divorce and child custody matters that implicate important state interests, and the record shows that the plaintiff has been afforded an adequate opportunity to raise her claims. (Doc. 43, at 12). By her own admission, she has been consistently involved in the child custody dispute and her divorce proceedings, and as we mentioned above, she most recently had a hearing in state court to address her outstanding motions. (Doc. 41-4, at 50). Moreover, the plaintiff has failed to cite any authority supporting her objection that

---

[2] We note that, although the issue of *Younger* abstention implicates the court's exercise of jurisdiction over the case, the Third Circuit has noted that "[d]ismissal on abstention grounds without retention of jurisdiction is in the nature of a dismissal under Fed. R. Civ. P. 12(b)(6)." *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1206 n.18 (3d Cir. 1992); *see also PDX N., Inc. v. Comm'r N.J. Dep't of Labor & Workforce Dev.*, 978 F.3d 871, 881 n.8 (3d Cir. 2020) (suggesting that *Younger* abstention is properly considered under Rule 12(b)(6) or Rule 12(c)). Thus, we have considered abstention under the Rule 12(b)(6) standard, rather than Rule 12(b)(1). Moreover, we note that "a court may raise *Younger* abstention sua sponte." *Altice USA, Inc. v. N.J. Bd. of Pub. Utils.*, 26 F.4th 571, 575 n.2 (3d Cir. 2022); *see also O'Neill v. City of Phila.*, 32 F.3d 785, 786 n.1 (3d Cir. 1994).

runs contrary to Judge Bloom's recommendation. Therefore, we agree with Judge Bloom's recommendation to abstain from the plaintiff's procedural due process claims involving the plaintiff's state court matters under the *Younger* abstention doctrine.

The plaintiff also objects to Judge Bloom's analysis concerning the merits of the remainder of her claims. The plaintiff first objects to Judge Bloom's finding concerning her state-created danger claims. The Third Circuit has succinctly classified the theory of state-created danger as follows:

> The government has no general legal duty to keep people safe. But it assumes one when it affirmatively places [a] person in a position of danger [that] the person would not otherwise have faced. Then, the government must protect people from the dangers it created. The Fourteenth Amendment's Due Process Clause requires it to do so.

*Mears v. Connolly*, 24 F.4th 880, 883 (3d Cir. 2022) (internal quotation marks and citations omitted). The plaintiff asserts that Judge Bloom erred in analyzing her state-created danger claims because he categorized her allegations as those of inaction, rather than those constituting affirmative acts. But upon review of the plaintiff's objections, many of the actions she characterizes as affirmative conduct

are, in fact, instances of inaction. *See e.g.,* (Doc. 40, ¶¶ 13, 104) ("The District Attorney's refusal to investigate or prosecute…" and "[t]he DA … declined to investigate complaints involving County actors…."). Moreover, while the plaintiff has alleged some actions of affirmative conduct on behalf of the defendants, such as maintaining that the county actors affirmatively misclassified domestic violence orders, closing a child abuse investigation without the necessary investigative steps, and entering into a stipulated custody order that the plaintiff claims was knowingly unsigned, we note that the Third Circuit has cautioned against expansion of the state-created danger doctrine based on Supreme Court precedent. *See Henry v. City of Erie*, 728, F.3d 275, 286 (3d Cir. 2013) (stating that courts must "exercise the utmost care whenever … asked to break new ground in this field.") (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Here, the plaintiff has failed to cite any authority supporting her contention that these acts can serve as the basis for a state-created danger claim, and approaching the plaintiff's claim with caution in light of the Third Circuit's guidance, we agree with Judge Bloom's recommendation that the plaintiff has failed to allege sufficient factual support for her claims.

The plaintiff also objects to Judge Bloom's recommendation that her First Amendment claims for retaliation and denial of access to courts should be dismissed. To state a denial of access to the courts claim under the First Amendment, a plaintiff must show (1) that he suffered an "actual injury," *i.e.,* that he lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that he has no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. *Monroe v. Beard*, 536 F.3d 198, 205–06 (3d Cir. 2008) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). Upon review of the plaintiff's third amended complaint, Judge Bloom found that the plaintiff failed to allege a concrete injury because she merely alleged that her filed motions were either ignored or decided against her, rather than sufficiently alleging she had lost the opportunity to present her claims. The plaintiff objects to Judge Bloom's finding, arguing that she had sufficiently alleged an actual injury for her claims. But upon review of the plaintiff's objections, we find that the plaintiff has failed to articulate exactly how she was denied access to the courts and how that denial led to an injury. Rather, she generally alleges that "the County's systemic corruption of the evidentiary record made it impossible

- 10 -

for [her] to present her non-frivolous claims regarding child safety." (Doc. 45, at 5). Moreover, the plaintiff's objections fail to address the deficiency noted in Judge Bloom's recommendation. The plaintiff fails to cite any authority to overcome that deficiency. Therefore, we agree with Judge Bloom's recommendation of dismissal of this claim.

To plead a retaliation claim under the First Amendment, a plaintiff must show: (1) that she engaged in constitutionally protected conduct; (2) that she suffered "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights"; and (3) a causal connection between the protected activity and the retaliatory act. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). Upon review of the plaintiff's third amended complaint, Judge Bloom found that the plaintiff failed to sufficiently allege a causal connection between a protected activity and a retaliatory act because the plaintiff failed to identify any retaliatory acts that occurred after her alleged protected activity. The plaintiff objects to Judge Bloom's finding, arguing that the third amended "complaint details a clear chronology" of retaliatory actions. (Doc. 45, ¶ 9). But upon review of the plaintiff's third amended complaint, we find

- 11 -

those alleged retaliatory actions still fail to provide enough specificity to support her claim. It is not enough that the plaintiff argues that her allegations convey a sufficient temporal proximity and pattern of antagonism to plausibly allege her claim. She must allege facts with enough detail to sufficiently support that conclusion, and here, she has failed to do so. As Judge Bloom noted in his report, her third amended complaint "does not indicate when the plaintiff engaged in this protected activity relative to when the alleged adverse actions occurred." (Doc. 43, at 17). Therefore, the plaintiff's objections do not meaningfully address the deficiency noted in her third amended complaint. Accordingly, we are not persuaded by the plaintiff's objections as to these claims.

The plaintiff also objects to Judge Bloom's finding concerning her equal protection claim. To establish an equal protection claim, a plaintiff "must point to an existing and relevant comparator." *Smith v. City of Atl. City*, 138 F.4th 759, 778 (3d Cir. 2025). This is because "the Fourteenth Amendment proscribes unequal treatment only among persons similarly situated according to a relevant standard of comparison." *Stradford v. Sec'y Pa. Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2022). Judge Bloom noted that an equal protection challenge must allege more than "broad

generalities" in identifying a comparator for purposes of the plaintiff's claim. But he found that the plaintiff's third amended complaint only asserted "broad generalities" when alleging that she was treated differently than others as a result of gender-linked stereotypes. In her objections, the plaintiff argues that her allegations of "channeling … domestic-violence survivors and protective mothers into a civil forum, while simultaneously denying them access to the criminal investigative processes available to other victims" is enough to make this distinction. (Doc. 45, ¶ 13). But as Judge Bloom noted, this objection still "fails to identify any similarly situated individuals, much less establish that the plaintiff was treated differently based on a protected characteristic." (Doc. 43, at 19). Indeed, although the plaintiff devotes three paragraphs to responding to Judge Bloom's finding, she spends only a single sentence addressing the deficiency noted in Judge Bloom's report. She also fails to cite any authority in support of her allegations to overcome that deficiency. Thus, we are not persuaded by the plaintiff's objections.

The plaintiff objects to Judge Bloom's recommendation for the dismissal of her municipal liability claim under *Monell*. Under *Monell* liability, a municipality can be liable only if the conduct alleged to be

unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to government 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 659 (1978). Under that standard, Judge Bloom found that the plaintiff's allegations solely rely on occurrences in her own family court matter, rather than a policy or custom on behalf of the county that would be subject to *Monell* liability. In her objections, the plaintiff argues that her third amended complaint demonstrates that the unconstitutional policies were the result of "widespread, persistent, and well-settled County customs." (Doc. 45, ¶ 15). But again, as Judge Bloom noted, these allegations are based solely on events in her own family court matter, and do not rise to an attributable policy or custom utilized by the County. The plaintiff has therefore failed to address the deficiency noted in Judge Bloom's report, and she has not provided the court with any authority to support the existence of the pattern that she alleges occurred in this action. Accordingly, the plaintiff's objections are meritless.

Finally, the plaintiff objects to Judge Bloom's recommendation for the dismissal of her conspiracy claim under Section 1983. The plaintiff contends that, contrary to Judge Bloom's finding, she has alleged "a pattern of coordinated and mutually reinforcing acts by separate County departments that cannot be plausibly as mere coincidence." (Doc. 45, ¶ 17). But we agree with Judge Bloom that the plaintiff's allegations fall short of establishing that any individuals came to the necessary "meeting of the minds" requirement to violate her constitutional rights, even drawing all reasonable inferences in the plaintiff's favor. As we read the third amended complaint, it is not enough to allege a conspiracy based solely on the plaintiff's belief that the challenged actions could not have been coincidental. A plaintiff must "allege specific facts that the Defendants reached an understanding or agreement to violate the [plaintiff's] constitutional rights." *Boykin v. Bloomsburg Univ. of Pennsylvania*, 893 F. Supp. 409, 417 (M.D. Pa. 1995), *aff'd*, 91 F.3d 122 (3d Cir. 1996). The plaintiff has failed to do so here, as she only alleges the existence of a "symbiotic system of obstruction" within the court system rather than specifics concerning an agreement between the defendants. Moreover, as we have found in the plaintiff's other claims,

she has failed to cite any authority to overcome the deficiencies noted in Judge Bloom's report.

It appears that the plaintiff does not directly object to Judge Bloom's recommendation that we should decline to exercise supplemental jurisdiction over her state law claims. Nonetheless, we will address Judge Bloom's recommendation concerning those claims. Where a district court has dismissed all claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). Whether the court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors … will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7. Upon consideration of these factors and the record before us, we find nothing to distinguish this case from the usual case. Therefore, we agree with Judge Bloom's recommendation

that we should decline to exercise supplemental jurisdiction over the plaintiff's state-law claims.

Moreover, while the plaintiff does not directly contest Judge Bloom's recommendation to deny the plaintiff's requests for a temporary restraining order, we will also address that recommendation here. A granting of preliminary injunctive relief, such as the plaintiff's request here, is an "extraordinary remedy which should be granted only in limited circumstances." *American Telephone & Telegraph Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1426 (3d Cir. 1994) (quoting *Frank's GMC Truck Center, Inc. v. General Motor Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)). When determining whether to grant a motion seeking preliminary injunctive relief, the Third Circuit considers four factors.[3] *United States v. Bell*, 238 F. Supp. 2d 696, 699 (M.D. Pa. 2003). One of the "most critical" factors is whether the plaintiff can show a likelihood of success on the merits of his claim. *Reilly v. City of Harrisburg*, 858 F.3d 173, 17 (3d Cir. 2017). Put differently, a movant for preliminary equitable

---

[3] The four factors are: (1) likelihood of success on the merits; (2) irreparable harm resulting from a denial of the relief; (3) the harm to the non-moving party if relief is granted; and (4) the public interest. *See Bell*, 238 F. Supp. 2d at 699.

- 17 -

relief "must demonstrate that it can win on the merits." *Id.* Here, after dismissing the plaintiff's federal claims and declining to exercise jurisdiction over the plaintiff's state law claims, Judge Bloom recommends that the plaintiff's requests for a TRO should be denied because the plaintiff's third amended complaint fails to state a claim likely to succeed on the merits. In other words, Judge Bloom recommends that the Court deny the plaintiff's requests because she cannot demonstrate she can win this case on the merits. We agree. In moving for injunctive relief, the plaintiff bears the burden to establish entitlement to relief by clear evidence. *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018) ("A moving party 'must establish entitlement to relief by clear evidence.'"). Here, the plaintiff has failed to carry that burden; she cannot demonstrate that she can win her case on the merits. Therefore, we agree with Judge Bloom's recommendation that the plaintiff's requests for TRO should be denied.

### III.  Conclusion

After conducting a de novo review of the contested portions of the report, we deem the plaintiff's objections to be unpersuasive. *See* 28 U.S.C. § 636(b)(1); *United States v. McLaughlin*, 607 F. Supp. 3d 522, 529

(M.D. Pa. 2022). We conclude that following an independent review of the report and the record, and having afforded "reasoned consideration" to the uncontested and contested portions of the report, *E.E.O.C. v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017), we are satisfied "that there is no clear error on the face of the record," Fed. R. Civ. P. 72(b) advisory committee note to 1983 amendment. We find Judge Bloom's analysis to be well-reasoned and fully supported by the record and applicable law. Accordingly, the court will adopt the report and recommendation as the decision of the court, as supplemented and modified by this memorandum opinion.

An appropriate order follows.

Dated: March 10, 2026                    *s/Joseph F. Saporito, Jr.*
                                         JOSEPH F. SAPORITO, JR.
                                         United States District Judge

- 19 -